NSAHLAI LAW FIRM
EMMANUEL NSAHLAI, SBN (207588)
Email: nsahlai.e@nsahlailawfirm.com
3250 WILSHIRE BLVD, STE 1500
LOS ANGELES, CA 90010
Tel    :  (213) 797-0369
Fax    :  (213) 973-4617

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jane Doe, individually and on behalf of others similarly situated, and on behalf of Cameroon Association of Victims of Ambazonia Terrorism, a foreign non-profit corporation; John Doe; DOES plaintiffs 1 through 1,000<br><br>Plaintiffs,<br><br>vs.<br><br>Ambazonia Foundation Inc.; Ambazonia Consulting Inc.; Ambazonia Relief Fund Inc.; Ambazonia Recognitions Collaborative Council ( ARRC) Inc.; Southern Cameroon Relief Fund Ltd; Ambazonia Broadcasting Corporation; Ambazonia Interim Government, entity form unknown; MORISC, entity form unknown; Eric Tano Tataw, an individual; and DOES 1-1000 | **Case No.:** _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTION AND DECLARATORY RELIEF**<br><br>1.  FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ANTI-TERRORISM ACT;<br>2.  FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ALIEN TORT CLAIMS ACT;<br>3.  FOR RICO (18 U.S.C. § 1962(C))<br>4.  FOR RICO CONSPIRACY (18 U.S.C. § 1962(D))<br>5.  LIABILITY FOR AIDING AND ABETTING ACTS OF INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a) and 18 U.S.C. §2339a<br>6.  LIABILITY FOR CONSPIRING IN FURTHERANCE OF ACTS OF INTERNATIONAL |

-1-

TERRORISM PURSUANT TO 18 U.S.C. § 2333(a) 18 U.S.C. §2339a

7. PROVISION OF MATERIAL SUPPORT TO TERRORISTS IN VIOLATION OF 18 U.S.C. §2339a

8. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

9. PROVISION OF FINANCING OF TERRORISM IN VIOLATION OF 18 U.S.C. § 2339C(a)

10. PROVISION OF FUNDS FROM WITHIN USA TO PLACE OUTSIDE USA FOR AN UNLAWFUL ACTIVITY 18 U.S.C. § 1956

11. VIOLATION OF THE EXPEDITION AGAINST FRIENDLY NATION 18 U.S.C. § 960

**DEMAND FOR JURY TRIAL**

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*      Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

# I.   INTRODUCTION

Plaintiffs are forced to bring this complaint using the "Doe" synonyms against these terrorist organizations because if their true identities are revealed, they will be targets for death, kidnappings, torture, or other heinous crimes, as committed by the armed groups which Defendants finance. When plaintiffs attorney filed a wrongful death complaint against two leaders of these defendant organizations, he has faced a minimum of three publicly posted death threats on Facebook against his life and that of his family, and many others on social media. This case involves terrorism. The Defendants are the corporate entities who, both individually and collectively, direct and control the armed Anglophone separatists groups, and facilitate the financing and material support of terrorism on behalf of the armed separatists groups in the Republic of Cameroon. It is these armed separatist groups that have killed plaintiff Jane Doe's workers, tortured them, cut their fingers and limbs, and annihilated her business. It is the armed separatist groups that killed on April 4, 2019, the common law wife, and mother of his daughter, of plaintiff John Doe. This case also presents a case of clear civil and criminal liability because Defendants, in their public postings, notices, press releases, or communications, essentially admit – without using the words "material support of terrorism" – that they engage in actions which by USA laws, and as defined by the Supreme Court of the United States, equates to criminalized material support of terrorism.

Plaintiffs, on behalf of themselves and all others similarly situated, and on behalf of CAVAT, who have suffered the death of family members, relatives, employees, agents, co-workers, laborers, and resulting from that, suffered severe emotional distress, harassment, anxiety, suffering, sleepless nights and other assorted grief and anguish due to the conduct, actions, participation, and material support of terrorism by Defendants  Ambazonia Foundation Inc., Ambazonia Consulting Inc., Ambazonia Relief Fund Inc., Ambazonia Recognitions Collaborative Council (

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*        Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

ARRC) Inc., Southern Cameroon Relief Fund Ltd, Ambazonia Broadcasting Corporation, Ambazonia Interim Government, entity form unknown, MORISC, entity form unknown (collectively "Defendants") bring this action.

Defendants are terrorist corporations and terrorist financing vehicles who conceived a way of scamming millions of Cameroonians from their hard earned money because of Cameroon's linguistic differences – Cameroon is a bilingual country, with 20% of the population English Speaking, and 80% are French speaking, sort of like kind Canada, but with the English/French ratio reversed - to declare a secessionist "government" for the minority English language populations.  They have collectively, on information and belief, already raised several million dollars through websites such as www.mytriptobuea.com, www.ambazoniagov.org, and multiple paypal and cashapp accounts through which they control, command, assist, provide expert advise, provide personnel, financial services, training, safehouses, weapons, lethal substances, and so on and forth. The owners and directors of the defendant corporate entities are all publicly engaging in acts constituting **materially support of terrorism,** of  violent crimes of killings, kidnappings, murder, violation of students education rights, terrorism, destruction of property and infrastructure, money laundering. Accordingly to United Nations Estimates as of December 2018, the conflict in Cameroon has led to the loss of about 600 civilians, and created 30,000 refugees living in Nigeria, and over 437,000 internally displaced Cameroonians suffering immeasurably. Most unfortunately, included in these statistics are employees of Jane Doe, most recently on April 3, 2019 for Jane Doe when her employee was shot – the third such incident in the past two years. For John Doe, his wife was shot on April 4, 2019.

Terrorism is defined as "the unlawful use of violence and intimidation, especially against civilians, in the pursuit of political aims as," and "international terrorism," according to 18 U.S.C. § 2331 as "activities that involve acts or acts

-2-

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

dangerous to human life that are in violation of the criminal laws of the United States or of any State, that would be a criminal violation if committed within the jurisdiction of the United States or of any State." Defendants provide material support of terrorism, including financing, to the armed separatists groups in Cameroon. Indeed, that is their *raison d'etre*, pardon the French.

This case is not about inhibiting rights to free speech, or to engage in political advocacy, or as a rights group, and it expressly disavows any such intentions, but it is about their conduct, actions, material support, and participation in terrorism, which lead to plaintiffs irreparable injuries. Defendants have engaged in conduct and actions equating to "training", "expert advice or assistance," "service", and providing "personnel" to the armed rebel fighters, which he has brought all under his control, leading to deaths of innocent civilians, including the parents and family members of plaintiffs.

The loss of one's life is never adequately compensated by monetary compensation, nor is the permanent loss of all economic interests of plaintiff. Accordingly, this complaint will also seek a Temporary Restraining Order, preliminary and permanent injunction, as well as declaratory relief, against any and all conduct, actions, participation, and material support of terrorism against Defendants, their promoters, organizations, supporters, accomplices, and DOES Defendants, who will be named once discovery gets going and they are identified.

## NATURE OF ACTION

1.     This is an action for Temporary Restraining Order, Preliminary and Permanent Injunction, as well as damages against Defendants and DOES 1-5000, pursuant to the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA") for aiding, abetting, accessories to crime before and after the fact, and pursuant the Material Support of Terrorism Statutes 18 U.S.C. § 2333A, for knowingly providing material support and resources to armed separatist groups that carried out Attack that killed plaintiff's Jane

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

1   Doe's employees on April 3, 2019, plaintiff John Doe's common law wife and mother
2   of his minor daughter on April 4, 2019, as wells attacks throughout circa October 2016
3   to present that has killed hundreds of innocent civilians, who are the parents, children,
4   and spouses, of US citizens and residents natives of Cameroon. A Congressional
5   excellent rendition of the history and purposes of 18 U.S.C. § 2333A ("the material
6   support of terrorism statutes") can be reviewed here.[1]

7       2.      The ATA's civil remedies have served as an important means for
8   enforcing the federal criminal anti-terrorism provisions since the early 1990s.

9       3.      Congress enacted the ATA in October 1992 as a legal complement to
10  criminal penalties against terrorists that kill or injure Americans abroad, specifically
11  intending that the civil provisions would not only provide a mechanism for
12  compensating victims of terror but also serve as an important means of depriving
13  terrorists of financial resources to carry out attacks.

14      4.      Following the bombing of the World Trade Center in New York by al-
15  Qaeda in1993, Congress targeted terrorist resources again by enacting 18 U.S.C. §
16  2339A in September 1994, making it a crime to provide material support or resources
17  knowing or intending that they will be used in preparing or carrying out terrorist acts.

18      5.      In April 1996, Congress further expanded the effort to cut off resources
19  to terrorists by enacting 18 U.S.C. § 2339B, making it a crime to knowingly provide
20  material support or resources to a designated foreign terrorist organization.

21      6.      In the wake of the terror attacks on the United States by al-Qaeda on
22  September 11, 2001 killing nearly 3,000 Americans, Congress amended the "material
23  support" statutes, 18 U.S.C. §§ 2339A-B, via the PATRIOT Act in October 2001 and
24  the Intelligence Reform and Terrorism Prevention Act of 2004, to impose greater

25
26  _____
27  [1] https://fas.org/sgp/crs/natsec/R41333.pdf
28                                              -4-
    _____
    *Jane Doe et al. v. Ambazonia Foundation Inc. et al*      Case .No. _____
                Complaint For Damages, Injunction and Declaratory Relief

criminal penalties for violating these statutes and to expand the definition of "material support or resources" prohibited thereby.

7.      The Ambazonia Interim Government ("AIG") is the self-anointed "government" of a most violent and repressive Ambazonian separatist movement, and, upon the coordination and planning and support and conspiracy of co-Defendants, it has pooled together all armed separatists fighters in their "Ambazonia" region under its Umbrella in joint command, control, and coordination with co-defendants.

8.      In reality, the AIG and co-Defendants are a RICO criminal enterprise, a scam, formed under the guise of several non-profit corporations which are co-defendants, and engaging in the material support of terrorism in the conflict region of Cameroon.

9.      These non-profit corporations, on information and belief, materially misrepresented their true intentions to the IRS in seeking non-profit 501c status. A complaint referral against each of them will be made to the IRS and to the Department of Assessments and Taxation, Maryland.

10.     Corporate defendants, as non profit corporations, are not supposed to engage in political and legislative lobbying which they consistently do, nor the purchase of firearms, or material support of crimes and violence – they have raised funds, and financed armed separatists in Cameroon which have killed plaintiffs laborers, cut their fingers, burnt their houses, if they disobeyed their edicts, such as, "ghost town," which prevents any civilian from stepping out of their home or going to work.

11.     Officially, defendants aim to raise the cost of Cameroon's government in the North West and South West regions of Cameroon to be higher than the profits the country gets from there; their aim is to make North-West and South-West regions of Cameroon "ungovernable" ( as publicly declared), and to coerce, intimidate, kill,

-5-

kidnap, harm any innocent civilians who do not obey or agree or subscribe to their political goals.

12.    At several points in 2018, Amnesty International and Human Rights Watch have accused the AIG separatists, materially supported by co-Defendants, of violently enforcing the boycott of government schools by destroying over 40 schools and assaulting teachers who refused to comply. They've also been accused of kidnapping civilians suspected of working with the government.

13.    Defendants knowing provide material support to the AIG, its fighters, agents, and related organizations, with the knowledge and intent, that they execute violent acts and crimes, in violation of USA laws, and such violent acts and crimes, not only harm Cameroonians living within Cameroon, but also a substantial portion of USA citizens of Cameroonian origin, whose parents, siblings, children, extended family are killed, businesses ruined, property stolen, and thus they suffer intolerable pain and anguish; or kidnappings, and the US based Cameroonians are contacted to pay ransom, as happens hundreds of times.

14.    By providing material support and platform, including holding fund raising activities for the armed separatist groups in Cameroon that are causing death to and irreparable injuries to plaintiffs,  Defendants have violated the federal prohibitions on providing material support or resources for acts of international terrorism (18 U.S.C. § 2339A), and committed acts of international terrorism as defined by 18 U.S.C. § 2331, as well as violated numerous other Federal and State criminal laws, as described further below. Accordingly, Defendants are liable pursuant to 18 U.S.C. § 2333 to the plaintiffs, who were injured by reason of acts of international terrorism.

15.    Plaintiffs' claims are based upon Defendants command, control, and operation of the armed separatist fighters that cause them irreparable harm and injury, and their provision of the financing and fund raising vehicle, corporate entity,

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*      Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

appearance of legitimacy infrastructure, platform, which provides material support to AIG and related armed separatists in Cameroon.

## THE PARTIES

16.     Jane Doe, a U.S.A citizen, and a resident of this County, has had her employees killed, fingers cut, feet sliced, houses burnt, when ever armed separatists realize that they have gone to work to her place of business. The latest killing of Jane Doe's employee occurred on April 3, 2019 in the conflict region of Cameroon.

17.     John Doe is a national of Cameroon. His common law wife, and mother of his daughter, was killed by armed separatists on April 4, 2019, because she violated their "lockdown" which they decreed, by and through their leaders residing here in USA, that no one should step outside of their homes during the period April 4th through April 14th, 2019.

18.     The Cameroon Association of Victims of Ambazonia Terrorism ("CAVAT") is a foreign non-profit corporation, with headquarters in Yaounde, Cameroon. It is comprised of victims of Ambazonia Terrorism, violence, and other crimes, to themselves, their family members, loved ones, and friends. The acts of violence committed against members of CAVAT and their families include the killings or assassinations of their family members, torture, maiming, kidnapping, arson against their property, and intimidation. The latter "intimidation" occurs to compel them to scribe to "separation" from Cameroon.

19.     The nondisclosure of Jane Doe's identity, as well as that of John Doe, is necessary for Jane Doe and her family's life, as Defendants are currently operational and engaging in consistent acts of terrorism. As the 9th Circuit has held, pseudonyms may be used to protect a party from "injury", and "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII* v. *Advanced Textile Corp., 214 F.3d*

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

*1058, 1067-68 (9th Cir. 2000)(quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981).* Plaintiffs will seek leave of court to proceed under a pseudonym.

20.     DOES Plaintiffs 1 -1000 are both USA citizens and Cameroon citizens, whether living in the USA or in Cameroon, who have suffered injury or harm, whether to themselves, or death of their parents and siblings, or loss of all economic interests and property, due to the actions of Defendants.

21.     Like minded Plaintiffs have setup a website, www.cameroonvictims.org, where similar plaintiffs, whether residing in the USA or in Cameroon, may submit in confidentiality the story of their loss, so that plaintiff's attorney may join them in this lawsuit.

22.     Defendant Ambazonia Foundation Inc., is a Maryland non-profit corporation. It has obtained IRS 501c non profit status.

23.     Defendant Ambazonia Consulting Inc. is a Maryland stock corporation. It's leaders are Etchu Tabenyang and Samuel Ikome. The latter, Samuel Ikome, is the self-declared "interim president" of the non-existent "Federal Republic of Ambazonia." He has approved all actions of defendants, in his capacity as president.

24.     Defendant Ambazonia Relief Fund Inc. is a Maryland non-profit corporation. It's founders are Ebenezer M. Akwanga, John Mbah Akuroh, and Elvis Kometa, individuals who, in their social media video and written posts, there is clear evidence of them ordering the killings, torture, kidnappings, arson of property, of civilians and others who they consider as enemies or as "occupiers."

25.     Defendant Ambazonia Recognitions Collaborative Council ( ARRC ) Inc. is a Maryland non-profit corporation. It's founders Jude Ambe, Boh Herbert, Lambert Mbom, Jude Ozughen are individuals who in their social media video and written posts, there is evidence of them aiding and abetting, and conspiring, and acting as accessories, to the ordering, killings, torture, kidnappings, arson of property, of civilians and others who they consider as enemies or as "occupiers."

26.    MoRISC is headed by Boh Herbert, one of the founding fathers of ARRC above in paragraph 23, with the business form of MoRISC unknown, whose website is at: https://morisc.org/.

27.    Defendant Ambazonia Broadcasting Corporation is a Maryland non – profit corporation. It's founder fathers are Sebastain Mbariku, George Fon, and Henry Mokube.

28.    Defendant Ambazonia Interim Government, form of business or association uknown, is an organization that has declared itself the "government" of the "Ambazonia" people. It's website notes it is the "Interim Governmetn Official Site Federal Republic of Ambazonia."[2]

29.    Defendant Southern Cameroon Relief Fund Ltd is a Maryland non-profit corporation. It's founders are Chistensia Asong, and Eric Tataw. We have attached eight separate videos as evidence in related pleadings where Eric Tataw orders his fighters to cut the limbs, hands, or other body organ of anyone who does not obey his edicts or approves of his separatist movement.

30.    Defendant Eric Tano Tataw, an individual, is a resident of Hyattsville, Maryland. Eric Tataw has consistently ordered his fighters to kill, cut the hands and limbs, of anyone who opposes his separatists views, and his orders, posted on Facebook on or about April 1, 2019, are a direct cause of the death of plaintiff's employee and John Doe's wife. Eric Tataw is also the founder of the Southern Cameroon Relief Fund Ltd.

31.    DOES Defendants 1 through 5000 are US residents, nationals, citizens, who are natives of Cameroon, who have provided financial and other material support, including training, expert advice or assistance, service, and personnel, to named

_____

[2] https://www.ambazoniagov.org/

-9-

_Jane Doe et al. v. Ambazonia Foundation Inc. et al_        Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

1  defendants and related entities in violation of Federal and State Anti-terrorism laws,
2  and other criminal statutes.

3

4                              **JURISDICTION AND VENUE**

5

6        32.    The Court has jurisdiction over this case under 28 U.S.C. §1331 (federal
7  question jurisdiction); and 28 U.S.C. §1332 (diversity jurisdiction).

8        33.    Jurisdiction over this action further exists pursuant to 28 U.S.C. §1332,
9  as there is complete diversity of citizenship between the parties and the amount in
10  controversy herein exceeds $75,000.00, exclusive of costs.

11       34.    Venue lies in the Central District of California because one of the
12  plaintiffs resides in this district, and pursuant to 18 U.S.C. §1332.

13       35.    Venue is further proper in this district pursuant to 18 U.S.C. §2334(a).

14       36.    The defendant are subject to jurisdiction pursuant to 28 U.S.C. §1331, in
15  that, as set forth in detail below, this action: seeks money damages against Defendants
16  for injury and death and loss of business and property caused by Defendants, which
17  constitutes an act of "international terrorism" in the United States as defined in 18
18  U.S.C. §2331. Because of Defendants material support of terrorism and violence, it
19  caused the deaths of plaintiffs and their loved ones, as well as total annihilation,
20  ongoing, of plaintiff Jane Doe's business.

21       37.    The Defendants are also subject to jurisdiction pursuant to 28 U.S.C.
22  §1331 in that, as set forth in detail below, this action seeks money damages against
23  Defendants for injury and/or death occurring in the United States and caused by the
24  tortious act or omission Defendants and/or one or more of his agents or partners acting
25  within the scope of their agency or partnership.

26

27                       **II.    FACTUAL ALLEGATIONS**

28
                                        -10-

## A. LEGAL BACKGROUND: ANTITERRORISM LEGISLATION

    i.     The Antiterrorism Act ("ATA")

38.    In the 1980's, terrorist groups carried out a number of major terror attacks around the world, killing and injuring many Americans abroad.

39. Among these terror attacks were:

    a.  The April 1983 suicide bombing of the U.S. Embassy in Beirut, Lebanon, killing 63people, including 17 Americans;

    b.  The October 1983 suicide bombing of U.S. Marine barracks in Beirut, Lebanon, killing 241 U.S. Marines and injuring more than 100;

    c.  the December 1983 terrorist bombings of the U.S. Embassy and the residential quarters of American company Raytheon in Kuwait;

    d.  The September 1984 terrorist bombing of a U.S. Embassy annex northeast of Beirut, Lebanon;

    e.  The June 1985 hijacking of TWA flight 847;

    f.  The October 1985 hijacking of the Achille Lauro cruise ship and murder of wheelchair-bound American Leon Klinghoffer; and

    g.  The December 1985 terrorist bombings of the Rome and Vienna airports.

40.    In response to these attacks, Congress in 1986 amended the U.S. Criminal Code, Title 18, Part I, to add a new chapter titled, "Extraterritorial Jurisdiction Over Terrorist Acts Abroad Against United States Nationals."

41.    This new chapter contained a new section titled, "Terrorist acts abroad against United States nationals," providing criminal penalties for killing, conspiring, or attempting to kill a national of the United States, or engaging in physical violence with the intent to cause serious bodily injury to a national of the United States or that results in serious bodily injury to a national of the United States.

-11-

42.     In addition, Congress later enacted the ATA, which established a private cause of action for U.S. nationals injured by acts of international terrorism, as a legal complement to the criminal penalties against terrorists that kill or injure Americans abroad.

43.     In enacting the ATA, Congress specifically intended that the civil cause of action would not only provide a mechanism for compensating victims of terror, but also serve as an important means of depriving terrorists of financial resources to carry out attacks.

44.     As the ATA was being considered in Congress, the State Department's Deputy Legal Advisor, Alan J. Kreczko, testified before the Senate Judiciary Committee's Subcommittee on Courts and Administrative Practice that this proposed bill "will add to the arsenal of legal tools that can be used against those who commit acts of terrorism against United States citizens abroad."[3]

45.     The Deputy Legal Advisor also testified:

"[T]his bill will provide general jurisdiction to our federal courts and a cause of action for cases in which an American has been injured by an act of terrorism overseas.
We view this bill as a welcome addition to the growing web of law we are weaving against terrorists. . . . The existence of such a cause of action . . .may deter terrorist groups from maintaining assets in the United States, from benefiting from investments in the U.S. and from soliciting funds within the U.S. In addition, other countries may follow our lead and implement complimentary national measures, thereby increasing obstacles to terrorist operations.
Moreover, the bill may be useful in situations in which the rules of evidence or standards of proof preclude the U.S. government from effectively prosecuting a criminal case in U.S. Courts. Because a different evidentiary standard is

---

[3] "Statement of Alan J. Kreczko, Deputy Legal Adviser, On S. 2465: A bill to provide a new civil cause of action in federal court for terrorist acts abroad against United States nationals," Before the Subcommittee on Courts and Administrative Practice of the Senate Judiciary Committee (July 25, 1990), https://www.state.gov/documents/organization/28458.pdf.

-12-

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

involved in a civil suit, the bill may provide another vehicle for ensuring that terrorists do not escape justice."[4]

46.  Likewise, Senator Grassley, one of the sponsors of the bill, explained a purpose of ATA's civil cause of action as follows:

"The United States must take a strong stand against terrorism. The Department of State testified that this bill would add to the arsenal of legal tools that can be used against those who commit acts of terrorism against U.S. citizens abroad. . . .
Now is the time for action. Now is the time to strengthen our ability to both deter and punish acts of terrorism.
We must make it clear that terrorists' assets are not welcome in our country. And if they are found, terrorists will be held accountable where it hurts them most: at their lifeline, their funds."[5]

47.  In July 1992, a Senate Committee Report explained that the ATA's treble damages provision "would interrupt, or at least imperil, the flow of money" to terrorist organizations.

48.  In October 1992, Congress enacted ATA's civil provisions, including 18 U.S.C. §2333.

## B.  The "Material Support" Statutes and Regulations

49.  On February 26, 1993, a group of *al-Qaeda* terrorists detonated a truck bomb under the North Tower of the World Trade Center in New York City, attempting to cause the collapse of both towers and the death of thousands of Americans.

50.  Although the damage from the World Trade Center bombing was limited, it nevertheless killed six people and injured more than one thousand.

51.  In response, Congress again took aim at the resources available to terrorists in September 1994 and enacted 18 U.S.C. § 2339A, making it a crime to

---

[4] Id.
[5] 36 Cong. Rec. 26716-26717 (Oct. 1, 1990), https://www.gpo.gov/fdsys/pkg/GPO-CRECB-1990-pt19/pdf/GPO-CRECB-1990-pt19-1.pdf.

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

provide material support or resources to terrorists, knowing or intending that they would be used for terrorist acts.

52.     DEFENDANTS and DOES Defendants engage in the provision of material support of terrorism through their AIG and its agents and soldiers, as Defendants conduct through fund raising meetings, declarations for actions which incite immediate and imminent hard to innocent civilians, their officially declared aim of conduct intimidation and threats against civilians, of kidnappings, and their acknowledged kidnappings, killings, of civilians they find non-compliant with their civilian goals. DEFENDANTS provide expert advice or assistance, personnel, training, and service to the AIG and related armed separatists who conduct acts of violence, intimidation, killings against civilians in the Anglophone regions of Cameroon.

53.     18 U.S.C. § 2339C implements the International Convention for the Suppression of the Financing of Terrorism. It proscribes the "unlawful[] and willful[]" provision or collection of funds with the intention or knowledge that they are to be used, in full or in part, to carry out a terrorist attack. 18 U.S.C. § 2339C(a) (2014). The predicate acts are offenses prohibited under international law by a counterterrorism treaty, id. § 2339C(a)(1)(A), (e)(6)–(7), or an act "intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population, or to compel a government or an international organization to do or to abstain from doing any act[.]" The intentions of the defendants are "separation" from Cameroon, and their terrorist, violence, crimes are all acts intended to cause the "government" of Cameroon to allow them to separate. They have publicly declared that, if through violence and guerilla warfare, the costs of remaining in their "region" is higher than the benefits of that region continuing to be part of Cameroon, then the government of Cameroon will allow the "separation." Hence, defendants have adopted the most heinous acts of terrorism to scare away the Cameroon government. *Id.* § 2339C(a)(1)(B).

**PLAINTIFF SPECIFIC FACTUAL ALLEGATIONS AGAINST CORPORATE DEFENDANTS**

54.    Plaintiffs seek such relief against DEFENDANTS for the attributable acts of the armed separatist groups in the North West and South West regions of Cameroon, its bodies, alter -egos, and officers, employees and agents acting within the scope of their office, employment or agency by DEFENDANTS knowingly providing material support and resources to the Armed separatists and facilitating the deaths of hundreds of others, in that, as set forth in detail herein, they:

a. Provide training, lodging, weapons, expert assistance, and financial support to armed separatists groups to engage in terrorist activities, including intimidation of civilians, and destruction of property.

b. Provide financing for the terrorist training camps in the North-West and South-West regions of Cameroon where Armed separatists indoctrinated and taught their soldiers how to carry out guerilla warfare, intimidation, violence, and terrorism against any military or uncooperative or unsupportive civilians.

c. Provide critical logistical support and resources to Armed separatists around North-West and South-West regions of Cameroon, funding safe houses, transferring Armed separatists money, weapons and equipment across international borders and other assistance, all of which enabled Armed separatists to conduct the attacks that killed plaintiffs parents and kills scores of other civilians, as well as resulted in total economic losses for plaintiff.

d. Actively supported armed separatist groups in its final preparations for the hit and run attacks and kidnappings,  through a network of the their soldiers, officers, and/or agents who met with and aided the AIG killers,

providing them with money, cover, advice, contacts, transportation, assistance and other material support and resources.

55.     Provide expert advice or assistance to the AIG and related organizations through their regular Facebook postings, YouTube videos,  which advises armed separatist fighters how, when, to act, stance to adopt, how to react, and instructions on punishments to meter to innocent civilians who don't obey, including plaintiffs parents.

56.     All the above-noted actions are in violation of 18 U.S.C. §§ 2339A and related anti-terrorism and criminal statues, the statutes that prohibits the provision of material support with the knowledge or intent that the support be used to carry out a terrorist attack, and other criminal statutes.

57.     Due to the above-noted actions, at several periods circa September 2016 to present, whenever plaintiff's laborers, workers, agents go to plaintiff's place of business, they are killed, kidnapped, their fingers cut, maimed, tortured, or other despicable act committed against them, all arising from the instructions of Defendants.

**FACTUAL ALLEGATIONS AGAINST INDIVIDUAL DEFENDANT ERIC TANO TATAW**

58.In a video posted on the online platform SCBC TV, on March 31, 2019, attached as an Exhibit A to the brief in support of TRO, and manually filed, file identified as VID-20190402-WA0054.mp4, a 6:59 minute video, defendant, a self-appointed, separatist Ambazonia "President", in one of his numerous material support of terrorism public postings declared that no Festival should take place in Limbe, Cameroon. And if anyone steps out to celebrate the festival, they should be killed. In compliance with these instructions, defendant Eric Tataw's

-16-

fighters, in complicity with co-defendant corporate entities, killed John Doe's spouse, killed and tortured Jane Doe's workers who wanted to go to work and participate in the Festival.

59. In the 6 video posts of defendant Eric Tataw, attached in the Appendix of Evidence of the TRO, each time Eric Tataw issued a public policy that a "lock down" is in effect in the conflict regions of Cameroon, plaintiff Jane Doe's employees are unable to work as they are scared of the retaliation of his armed separatists, as well as they have seen their colleagues hands chopped off and tortured for disobeying Tataw's lockdown orders.

60. Every time any of plaintiff Jane Doe's employees tried to get to work, following the publicly posted videos of Eric Tataw, they were hurt and beaten, and promised death, by armed separatists fighters.

**DEFENDANTS's specific intent and knowledge of the armed separatists terrorist agenda from October 2016 to present.**

61.    At all relevant times mentioned herein, DEFENDANTS adopted an extremist version of separation from Cameroon, seeking violence and terror and kidnappings and intimidation against any non-compliant civilian as the means to achieve secession from the Republic of Cameroon.

62.    As detailed herein, DEFENDANTS's AIG agents, partners, and joint venture associates, continued to provide material support and resources for Armed separatists through late 2016, and including May 20, 2018 to present, combined actions that led to plaintiffs loss by brutal killings of employees, laborers, agents, and total loss of economic activity at plaintiff's place of business.

1

2      **DEFENDANTS's tortious acts were a proximate cause of the Attacks**

3      **causing the death of plaintiffs employees, torture and maiming of plaintiffs**
       **employees, and total loss of operations and business for over two years.**

4

5      63.    DEFENDANTS and his accomplices, and DOES Defendants, set in

6      motion, a series of postings, threats, warnings, to any Anglophone civilian who dares

7      not obey them, or who they consider "French speaking", should be killed, maimed,

8      and their property destroyed or burnt.

9      64.    Whenever plaintiffs employees, laborers, agents, disobey the mandate of

10     Defendants emanating from the USA, they are killed, tortured, maimed, or other

11     atrocity befalls them.

12                   **DEFENDANTS's direct funding of the armed separatists.**

13     65.    DEFENDANTS is responsible for coordinating and raising substantial

14     funding for separatists armed groups that are vital to the operation of that terrorist

15     organization and its preparations for the attacks that kill plaintiff's employees, maims

16     and tortures them, and burns their property. father, as well as hundreds of civilians:

17     66.    Top ranking  DEFENDANTS sympathizers made substantial financial

18     contributions to defendants separatist fighters;

19     67.    From 2017 through and including present  DEFENDANTS, acting

20     through their agents, joint venture associates, and partners, including Does Defendants

21     1-5000, have raised money through meetings, groups, social media, to support their

22     AIG fighters and related organizations in executing their stated political aims and

23     official positions, which includes terrorism as defined in USC code against innocent

24     civilians. Some of these civilians have relatives abroad here in the USA, and their

25     death, torture, kidnapping directly affects their USA citizen families.

26

27      **DEFENDANTS's material support of armed separatists camps are used**
        **to indoctrinate and provide terrorist training for armed separatists groups**

28

68.    DEFENDANTS's armed separatists and others involved in supporting violence, terrorism, and other attacks by armed separatist groups from late 2016 to present, were indoctrinated and given their terrorist training necessary to prepare for and execute attacks that killed plaintiffs parents, and other attacks at one or more defendant owned and controlled terrorist training camps located in the bushes of the North-West and South-West regions, far from where there are roads or easy accessibility.

69.    Prior to and including 2016 to present,  DEFENDANTS provided logistical support to Armed separatists in additional ways, as will be determined through further investigation, disclosures and discovery of  DEFENDANTS.

**DEFENDANTS's material support for separatists armed groups' planning and execution of the attacks that killed plaintiff's employees, maimed them, tortured them, and burnt their property.**

70.    DEFENDANTS provided material support and resources for separatist armed groups and their fighters directly linked to the actual planning and execution of the Attacks that killed plaintiff's employees and laborer at various dates from late 2016 to present, various torture actions, maiming, and destruction of property. This is in addition to numerous other attacks numbering in the hundreds from late 2016 to present, attacks against students who seek to go to school, government officials, and other innocent civilians. His material support of terrorism and crimes includes:

i.  Fund raising

j.  Using their Facebook posts, or that of their leaders such as Eric Tano Tataw and Chris Anu, to provide instructions on strategy, policy, and AIG regulations

k.  Recruiting of armed separatists

l.  Assistance with procuring and providing weapons, equipment, and other tangible materials.

m. Coordination with other separatists groups abroad and in Cameroon

n. Leadership of the AIG in the USA

o. Expert advice and assistance on how to obtain separation by violence and force from Cameroon

p. Assistance with the training of armed separatists

q. Using other social media such as email, twitter, Skype, WhatsApp to promote AIG violent agenda, plan the dates and times of attacks, and other activities in violation of USA laws.

r. Recruiting of administrative personnel in the USA to assist the AIG in all aspects of its goals.

s. Providing media relations service, coordination services, for the AIG in the USA; and so on and forth, without limitation.

### DEFENDANTS's domination and control of armed separatists conduct

71.    As set forth herein, at all relevant times,  DEFENDANTS use their position from the USA to effectuate all the various services, conduct, and duties, without limitation, listed in the preceding paragraphs.

72.    A major conference was held during the weekend of March 29, 2019 through March 31, 2019. At that conference, all major leaders addressed their participants and vowed to support the armed separatists with in Cameroon with weapons, ammunition, explosives, provide expert assistance, financing, facilities, and leadership. Defendants named herein, and their corporate directors, founders, were present. Select YouTube videos of their proclamations seeking war, killings of those that oppose them, and material support of the armed separatists can be found here.[6] [7]

### Defendants Expedition Against a Friendly Nation

---

[6] https://www.youtube.com/watch?v=zWROS9_R2eQ

[7] https://www.youtube.com/watch?v=lNHvE6Se3Uc

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*      Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

73.    For the weekend March 29th through March 31, Defendants jointly organized the All Southern Cameroons People Conference. [8]

74.    On information and belief, all defendants, except individual defendant Eric Tano Tataw, attended this conference.

75.    During this Conference, in lawless, imminent harm and threats incitement, and material support of terrorism, several of the founders and directors of corporate defendants vowed to raise funds, purchase weapons, kill members of the Cameroon government and military, go to war against Cameroon, intimidate civilians who don't follow them, and other crimes. They resolved that war is the solution to their "separation" aims, and its either death or "separation." Videos of this conference are readily available on YouTube, and features the corporate defendant directors and founders as they keynote speakers.[9]

76.    A similar conference by defendants was held in Berlin on April 12 to April 14, 2019. Videos of the war and violent rhetoric, taking up arms, guns, and using force to achieve their "separation" against Cameroon is available here. [10]

77.    Since their formation, defendants have held multiple such meetings, to raise arms, overthrow the government of Cameroon, form the enterprise which they formed for such acts, and support armed separatists in Cameroon in manners constituting the material support of terrorism.

78.    In engaging in violation of 18 U.S.C. 1960, defendants caused plaintiffs irreparable harm and injury, continue to do so, and will continue to so do.

## FIRST CAUSE OF ACTION

---

[8] https://www.eventbrite.com/e/all-southern-cameroons-peoples-conference-ascpc-tickets-57362144719#

[9] https://www.youtube.com/results?search_query=all+southern+cameroons+people%27s+conference+in+washington+dc

[10] https://www.facebook.com/AmbaASSUC/?__tn__=%2Cd%2CP-R&eid=ARDS0D4-JsaAOFVUNRpiRoGhZ40IxjfWpdux08KPG_C6gYh-nbwIS63uwNE0J_-gX7V3HrkbJQOOTQfT

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*        Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

**TO RECOVER PERSONAL INJURY <u>PURSUANT TO THE ANTI-TERRORISM ACT</u>**

79.   Plaintiffs repeat and re-allege all of the preceding paragraphs as if fully set forth herein.

80.   This action is brought pursuant to 18 U.S.C. § 2333(a) for the injuries and deaths and harm suffered by U.S. nationals' Jane Doe's employees, laborers, agents, and others in Cameroon.

81.   Those attacks constituted acts of international terrorism pursuant to 18 U.S.C. §2331 that violated federal and state laws against murder, kidnapping, assault, torture, maiming, including but not limited to 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder).

82.   Pursuant to 18 U.S.C. §2333(a), (d),  DEFENDANTS aided and abetted armed separatists through numerous acts detailed herein by knowingly providing it with substantial material assistance to prepare and carry out an act or acts of international terrorism.

83.   Pursuant to 18 U.S.C. §2333(a), (d),  DEFENDANTS conspired with Armed separatists and others to provide it with substantial material support and resources, with the shared understanding, knowledge and intent that said support and resources would be used by Armed separatists to prepare and carry out an act or acts of international terrorism.

84.   The others in the conspiracy currently known to plaintiffs are not named herein, but include Ayaba Cho, Ivo Tapang, Boh Hebert, Akwanga Ebenezer, Mark Bareta, Ikome Sako, Capo Daniel, Christopher Anu Fobeneh and others.

85.   Pursuant to §2333(a),  DEFENDANTS committed an act or acts of international terrorism, as defined in 18 U.S.C. § 2331(1)(A), in violation of federal and state criminal laws, or that would have been a criminal violation if committed

-22-

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

within the United States or any state, including but not limited to a violation of the following:

    a.  18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime;
    b.  18 U.S.C. §371 — Conspiring to commit a federal crime;
    c.  18 U.S.C. §2332b — Conspiring to commit an act of terrorism;
    d.  18 U.S.C. §2339A - Providing material support to terrorists;
    e.  18 U.S.C. §2339C - Prohibitions against the financing of terrorism;
    f.  CA Penal Code §31 — Accomplice liability – Aiding and Abetting Law;
    g.  CA Penal Code §182 - Criminal Conspiracy
    h.  CA Penal Code §32 – Accessory after the fact

86.    DEFENDANTS' conduct amount to a violation of 18 U.S.C. § 2(a) because DEFENDANTS intentionally aid and abet and counsel the commission of a criminal act or acts of international terrorism by Armed separatists, including its operatives, by providing the terrorist organization with material support, resources and funding with the knowledge that Armed separatists would use such assistance to prepare for and commit such a criminal act or acts.

87.    DEFENDANTS' conduct amount to a violation of 18 U.S.C. §371 because it conspires with Armed separatists and others to provide it with substantial material support and resources with the shared understanding, knowledge and intent that said support and resources would be used by Armed separatists to prepare for and carry out a criminal act or acts of international terrorism.

88.    DEFENDANTS' conduct amount to a violation of 18 U.S.C. §2339A in that they provide material support or resources for Armed separatists and/or conspired with Armed separatists and others to provide material support or resources for Armed separatists, with the knowledge or intent that they would be used in preparation for, or in carrying out a violation of the statutes specified in 18 U.S.C. §2339A, including 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder) and violation of others laws as itemized in paragraph 80.

89.  DEFENDANTS's conduct amounted to a violation of relevant state criminal laws on facilitating, aiding and abetting a crime, and conspiracy, including but not limited to those cited above, in that it:

a.  intentionally aided, abetted and counseled Armed separatists by providing it with material support, resources and funding with the knowledge that Armed separatists would use such assistance to commit an act or acts of international terrorism; and/or

b.  believing it was probably rendering aid in the form of material support or resources and funds to Armed separatists to engage in a crime, provided Armed separatists with the means or opportunity for the commission thereof and which in fact aided Armed separatists to commit the Attack that killed plaintiff's employees and wife, and/or all other attacks and intimidation on innocent civilians from October 2016 to present.

c.  conspired with the  Armed separatists, Armed separatists operatives and sympathizers and others known and unknown, to violate relevant state criminal laws on facilitating and aiding and abetting a crime and committing an act or acts of terrorism, including assault, kidnapping and murder.

90.  As detailed herein, the aforesaid act or acts of international terrorism:

a.  involve a violent act or acts dangerous to human life, as demonstrated by the known and foreseeable outcomes of injury and death resulting from providing substantial assistance to Armed separatists terrorists;

b.  were committed primarily outside the territorial jurisdiction of the United States and also transcended national boundaries in terms of the means by which they were accomplished, the persons they appear intended to

intimidate or coerce, and the locales in which their perpetrators operated; and

c. appeared to be intended to intimidate or coerce a civilian population; to influence the policy of a government by intimidation or coercion; or, to affect the conduct of a government by mass destruction, kidnapping or assassination.

91. The aforesaid acts of DEFENDANTS were not mere negligence, but each act individually and/or in combination with one or more acts, constituted conduct that was intentional, reckless, willful and/or grossly negligent and each of those acts individually and/or in combination with one or more of those acts was a proximate cause of the attacks that killed, maimed, tortured, and burnt plaintiffs employees, laborers, and agents.

92. As a result, the DEFENDANTS and all DOES Defendants are liable to plaintiffs for all damages resulting from the injuries and harm suffered by plaintiff, as well as the deaths and sufferings of all those similarly situated as plaintiffs.

93. WHEREFORE, plaintiffs pray that judgment(s) for relief in the form of an award or awards of monetary damages for personal injury, all recoverable losses under 28 U.S.C. §2333 and other appropriate relief be entered on their first cause of action in favor of the plaintiffs individually and against the defendant DEFENDANTS , with separate awards for each plaintiff, where appropriate, plus interest, costs, punitive damages, treble damages, attorney's fees, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ALIEN TORT CLAIMS ACT

94. Plaintiffs repeat and re-allege all of the preceding paragraphs as if fully set forth herein.

95.    The Alien Tort Claims Act, 28 U.S.C. §1350, allows aliens to sue for torts committed in violation of the law of nations, international law or a treaty of the United States.

96.    The conduct of DEFENDANTS as detailed herein to provide substantial material support, resources and sponsorship for Armed separatists and its acts of international terrorism resulting in the Attack that that killed, maimed, tortured, and burnt plaintiffs employees, laborers, and agents. constitutes a clear violation of the law of nations and international law, which includes international legal norms prohibiting crimes against humanity, mass murder, genocide, torture, extrajudicial killing, air piracy, financing of terrorism, and terrorism, which can be found in and derived from, among other things, the following conventions, agreements, U.N. declarations and resolutions, and other documents:

a.  Charter of the International Military Tribunal, Aug. 8, 1945, 59 Stat. 1544, 82 U.N.T.S. 279;

b.  Allied Control Council Law No. 10 (Dec. 20, 1945);

c.  Convention on the Prevention and Punishment of the Crime of Genocide, Dec. 9 1948, 78 U.N.T.S. 277;

d.  Geneva Convention (IV) Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 75 U.N.T.S. 287;

e.  Hague Convention for the Suppression of Unlawful Seizure of Aircraft (Hijacking), Dec. 16, 1970, 22 U.S.T. 1641, 860 U.N.T.S. 105;

f.  International Convention for the Suppression of Terrorist Bombings, Dec. 15, 1997, 2149 U.N.T.S. 284 (entered into force May 23, 2001);

g.  International Convention for the Suppression of the Financing of Terrorism, Dec. 9, 1999, 2178 U.N.T.S. 229 (entered into force Apr. 10, 2002);

h. U.N. Security Council Resolution 1267, U.N. Doc. S/RES/1267 (Oct. 15, 1999);

i. U.N. Security Council Resolution 1373, U.N. Doc. S/RES/1373 (Sept. 28, 2001);

j. Protocol Additional (I) to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflict, June 8, 1977, 1125 U.N.T.S. 3;

k. Protocol Additional (II) to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of Non-International Armed Conflicts, June 8, 1977, 1125 U.N.T.S. 609;

l. Statute of the International Criminal Tribunal for the Former Yugoslavia (ICTY), in Report of the Secretary-General pursuant to paragraph 2 of S.C. Res.808, May 3, 1993, U.N. Doc. 8/25704, adopted unanimously by S.C. Res. 827, U.N. SCOR, 48th Sess., 3217th mtg., 16, U.N. Doc. S/PV.3217 (1993);

m. The Convention on the Prevention and Punishment of Crimes Against International Protected Persons, Including Diplomatic Agents, 28 U.S.T. 1975, T.I.A.S. No. 8532 (1977), implemented in 18 U.S.C. § 1121;

n. The General Assembly Resolutions on Measures to Prevent International Terrorism, G.A. Res. 40/61 (1985) and G.A. Res. 42/159 (1987); and

o. The Convention on the High Seas, April 29, 1958, arts. 14-22 (piracy), 13 U.S.T. 2312, 450 U.N.T.S. 11.

97.     DEFENDANTS's conduct was a substantial cause of the Attacks that killed, maimed, tortured several employees of plaintiff, as well as caused the total loss of plaintiffs economic interests from late 2016 to present.

98.     Defendants' actions directly caused the death of John Doe's wife.

-27-

**THIRD CAUSE OF ACTION**
**FOR RICO (18 U.S.C. § 1962(C))**

99.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

100.   DEFENDANTS and all Does Defendants 1 – 5000 (collectively "Defendants") are all "persons" within the meaning of 18 U.S.C. § 1961(3). At all relevant times, Defendants conducted the affairs of an Enterprise—which affected interstate and foreign commerce—through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

**A.    Defendants are a Racketeering Enterprise**

101.   Defendants are a Racketeering Enterprise, as that term is used in 18 U.S.C. § 1961(4).

102.   Defendants have an ongoing organizational framework for carrying out its objectives.

103.   As described above, DEFENDANTS and each DOES Defendant participate in the operation or management of the Enterprise.

104.   Because defendants raise millions of dollars to support their terrorist operations in Cameroon, by contacting sympathetic USA based Anglophone Cameroon natives, it affects interstate and foreign commerce.

105.   DEFENDANTS and each DOES Defendant conducted and/or participated in the affairs of the Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C - Prohibitions against the financing of terrorism; without limitation.

1

2

**B.    Alternatively, and at the Very Least, defendants are part of an Association-In-Fact Enterprise**

3

4

106.    Alternatively, and at the very least, defendants are part of an Association-In-Fact Enterprise comprising DEFENDANTS and DOES Defendants, AIG, and similar organizations. . The Association-In-Fact Enterprise was formed by at least January 2017. From that time until present, the members of the Association-In-Fact Enterprise worked together to further their mutual goals of separation from the Republic of Cameroon to form an Ambazonia state, using guerilla tactics, terrorism, providing material support to AIG fighters and related organizations, violence and intimidation of Anglophone Cameroonians who do not support their political aims, kidnappings, and other evil atrocities.

5

6

7

8

9

10

11

12

107.   The Association-In-Fact Enterprise has an ongoing organizational framework for carrying out its objectives. In fact, the Association-In-Fact Enterprise could not have carried out its intricate task of sharing confidential information at the moments when it would be most beneficial to AIG unless it had some structure for making and communicating group decisions. The Association-In-Fact knows how to reach its AIG fighters, agents, camps to provide instructions on what carnage to execute on designated dates and times, including the Attack that killed plaintiff's father.

13

14

15

16

17

18

19

20

108.   As described above, each Defendant participated in the operation or management of the Association-In-Fact Enterprise, and benefitted financially from the enterprise.

21

22

23

109.   Because the Association-In-Fact Enterprise's activities including the raising of funds from Cameroon native sympathizers across the 50 states of the USA, using interstate transportation and communications, traveling interstate to give

24

25

26

27

28

-29-

speeches, incite support, obtain goods and services for the AIG based operatives in Cameroon, it affected interstate and foreign commerce.

## C.    RICO Predicate Acts

110.    Each Defendant conducted and/or participated in the affairs of AIG and the Association-In-Fact Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C - Prohibitions against the financing of terrorism; without limitation.

111.    Additional facts, conduct, actions, of DEFENDANTS and DOES Defendants, including AIG, acting jointly, and in concert with each other, are as noted in the Exhibit A and Exhibit B documents listed with links to the videos, as well as videos listed, with hyperlinks to the videos.

## C.    RICO Damages

112.    Plaintiff has been injured by Defendants' violation of 18 U.S.C. § 1962(c). Defendants caused enormous harm to Plaintiff, as described above. All of these injuries occurred within the United States.

### FOURTH CAUSE OF ACTION
### FOR RICO CONSPIRACY (18 U.S.C. § 1962(D))

113.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

114.    Defendants conspired with each other to violate 18 U.S.C. § 1962(c). Defendants knowingly agreed, combined, and conspired to conduct the affairs of the Enterprise or the Association-In-Fact Enterprise through AIG operations, Interim Government ("IG") operations, Southern Cameroons Defense Forces (SOCADEF)

-30-

operations, and the like. Each Defendant agreed that the operation would involve repeated violations of 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C - Prohibitions against the financing of terrorism; without limitation Defendants' conspiracy to violate 18 U.S.C. § 1962(c) violated § 1962(d).

115.   Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962(d). Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962(c). Defendants caused enormous harm to Plaintiff's. All of these injuries occurred within the United States.

**FIFTH CAUSE OF ACTION**
**LIABILITY FOR AIDING AND ABETTING ACTS OF INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)**

116.   Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

117. DEFENDANTS and AIG have committed, planned, or authorized activities that involved violence or acts dangerous to human life that are a violation of the criminal laws of the United States, or that would be a criminal violation if committed within the jurisdiction of the United States, including inter alia the prohibition on killing, attempting to kill, causing serious bodily injury, or attempting to cause serious bodily injury, as set forth in 18 U.S.C. § 2332, as well as crimes of assault, battery, criminal conspiracy.

118.   These activities committed, planned, or authorized by DEFENDANTS and his AIG appear to have been, and were intended to: (a) intimidate or coerce the civilian populations of Cameroon; (b) influence the policy of the Government of Cameroon by intimidation or coercion; or (c) affect the conduct of the Governments

Cameroon, France, the United States and other countries by violence, destruction of property, killings of government officials, kidnapping, and intimidation.

119.   These activities committed, planned, or authorized by DEFENDANTS and AIG occurred partially outside of the territorial jurisdiction of the United States and constituted acts of international terrorism as defined in 18 U.S.C. § 2331(1).

120.   Plaintiffs have been injured in their person by reason of the acts of international terrorism committed, planned, or authorized by DEFENDANTS and AIG.

121.   At all times relevant to this action, Defendant DEFENDANTS knew that AIG was an Organization, that it had engaged in and continued to engage in illegal acts of terrorism, including international terrorism.

122.   Defendants knowingly provided substantial assistance and encouragement to AIG and related armed groups and militia in Cameroon, and thus aided and abetted AIG and these armed separatists groups in committing, planning, or authorizing acts of international terrorism, including the acts of international terrorism that injured Plaintiffs.

123.   By aiding and abetting AIG and related armed groups and militia in Cameroon in committing, planning, or authorizing acts of international terrorism, including acts that caused each of the Plaintiffs to be injured in his or her person and property, Defendants are liable pursuant to 18 U.S.C. § 2333(a) and (d) for threefold any and all damages that Plaintiffs have sustained as a result of such injuries, and the costs of this suit, including attorney's fees.

## SIXTH CAUSE OF ACTION
## LIABILITY FOR CONSPIRING IN FURTHERANCE OF ACTS OF INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)

124.   Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

125.   Defendant DEFENDANTS knowingly agreed, licensed, and permitted armed separatists affiliates to register and use Defendants' platform, Facebook posts, WhatsApp account, twitter, phone communications, financial support, fundraising, conduct, actions, participations, and other services to promote and carry out AIG's activities, including AIG's illegal acts of international terrorism that injured Plaintiffs.

126.   Defendant DEFENDANTS were aware that U.S. federal law prohibited providing material support and resources to, or engaging in transactions with, terrorist organizations and/or engaging in acts constituting international terrorism.

127.   By conspiring with armed separatists in furtherance of their commission, planning, or authorizing acts of international terrorism, including acts that caused each of the Plaintiffs to be injured in his or her person and property, DEFENDANTS are liable pursuant to 18 U.S.C. § 2333(a) and (d) for threefold any and all damages that Plaintiffs have sustained as a result of such injuries, and the costs of this suit, including attorney's fees.

**SEVENTH CAUSE OF ACTION**
**PROVISION OF MATERIAL SUPPORT TO TERRORISTS**
**IN VIOLATION OF 18 U.S.C. § 2339A AND 18 U.S.C. § 2333**

128.   Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

129.   DEFENDANTS's conduct of fundraising activities for armed separatist groups, instructions to organize violence in Cameroon,  platform, Facebook posts, WhatsApp account, twitter, phone communications, and conduct, financial support, fundraising, actions, participations, other services to promote and carry out, substantially assisted armed separatist groups in carrying out its terrorist activities,

-33-

1   including recruiting, radicalizing, and instructing terrorists, raising funds, creating fear
2   and carrying out attacks, among other things.

3       130.   Through their actions, DEFENDANTS  also provide personnel to AIG
4   and related armed separatist groups by making DEFENDANTS and his AIG leaders,
5   members, and potential new recruits available to each other for mutual help,
6   assistance, encouragement, sharing of information, services, and expert advice or
7   assistance.

8       131.   These services, equipment, and personnel constituted material support
9   and resources pursuant to 18 U.S.C. § 2339A, and they facilitate acts of terrorism in
10  violation of 18 U.S.C. § 2332 that caused the death of Plaintiff's employees and wife.

11      132.   DEFENDANTS provided these services, equipment, and personnel to
12  armed separatist groups, knowing that they were to be used in preparation for, or in
13  carrying out, criminal acts including the acts that injured the Plaintiffs.

14      133.   As set forth more fully above, but for the material support and resources
15  provided by Defendants, the attack that injured and killed Plaintiffs employees would
16  not have occurred, nor the total loss of their economic interests.

17      134.   By committing violations of 18 U.S.C. § 2339A that have caused the
18  Plaintiffs to be injured in his or her person, business or property, Defendants are liable
19  pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have sustained as
20  a result of such injuries.

21

22  **EIGTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
23

24      135.   Plaintiffs repeat and re-allege each of the foregoing allegations with the
25  same force and effect as if more fully set forth herein.

26

27

28  -34-

136.   DEFENDANTS engaged in negligent behavior by providing services, material support, training, expert advice or assistance, personnel, social media platform, other media communications, to AIG and related armed separatist groups.

137.   DEFENDANTS's acts of providing the afore-noted actions to AIG and other armed separatist groups constituted a willful violation of federal statutes, and thus amounted to a willful violation of a statutory standard.

138.   As a direct, foreseeable and proximate result of the conduct of DEFENDANTS as alleged herein above, Plaintiffs has suffered severe emotional distress, and therefore DEFENDANTS is liable to the Plaintiffs for Plaintiffs' severe emotional distress and related damages.

### NINTH CAUSE OF ACTION
### PROVISION OF FINANCING OF TERRORISM IN VIOLATION OF 18 U.S.C. § 2339C(a)

139.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

140.   DEFENDANTS's conduct of fundraising activities for armed separatist groups, instructions to organize violence in Cameroon,  platform, Facebook posts, WhatsApp account, twitter, phone communications, and conduct, financial support, fundraising, actions, participations, other services to promote and carry out, substantially assisted armed separatist groups in carrying out its terrorist activities, including recruiting, radicalizing, and instructing terrorists, raising funds, creating fear and carrying out attacks, among other things.

141.   Through their actions, DEFENDANTS  also provide personnel to AIG and related armed separatist groups by making DEFENDANTS and his AIG leaders, members, and potential new recruits available to each other for mutual help,

assistance, encouragement, sharing of information, services, and expert advice or assistance.

142.   These services, equipment, and personnel constitute the provision of financing of terrorism in violation of 18 U.S.C. § 2339C( a), and they financed the acts of terrorism that caused the death of Plaintiff's employees and wife.

143.   DEFENDANTS provided these funds, monies, financial instruments, and other monetary assistance, obtained from within the USA, to the armed separatist groups in Cameroon, knowing that they were to be used in preparation for, or in carrying out, criminal acts including the acts that injured the Plaintiffs.

144.   As set forth more fully above, but for the violation of this Statute by Defendants, the attack that injured and killed Plaintiffs employees would not have occurred, nor the total loss of their economic interests.

145.   By committing violations of 18 U.S.C. § 2339C( a) that have caused the Plaintiffs to be injured in his or her person, business or property, Defendants are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have sustained as a result of such injuries.

## TENTH CAUSE OF ACTION
## PROVISION OF FUNDS FROM WITHIN USA TO PLACE OUTSIDE USA FOR AN UNLAWFUL ACTIVITY 18 U.S.C. § 1956

146.   Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

147.   DEFENDANTS's conduct of fundraising activities for armed separatist groups, instructions to organize violence in Cameroon,  platform, Facebook posts, WhatsApp account, twitter, phone communications, and conduct, financial support, fundraising, actions, participations, other services to promote and carry out, substantially assisted armed separatist groups in carrying out its terrorist activities,

-36-

including recruiting, radicalizing, and instructing terrorists, raising funds, creating fear and carrying out attacks, among other things.

148.   Through their actions, DEFENDANTS  also provide personnel to AIG and related armed separatist groups by making DEFENDANTS and his AIG leaders, members, and potential new recruits available to each other for mutual help, assistance, encouragement, sharing of information, services, and expert advice or assistance.

149.   These services, equipment, and personnel constitute the provision of financing of terrorism in violation of 18 U.S.C. § 2339C( a), and they financed the acts of terrorism that caused the death of Plaintiff's employees and wife.

150.   DEFENDANTS provided these funds, monies, financial instruments, and other monetary assistance, obtained from within the USA, to the armed separatist groups in Cameroon, knowing that they were to be used in preparation for, or in carrying out, criminal acts including the acts that injured the Plaintiffs.

151.   As set forth more fully above, but for the violation of this Statute by Defendants, the attack that injured and killed Plaintiffs employees would not have occurred, nor the total loss of their economic interests.

152.   By committing violations of 18 U.S.C. § 2339C( a) that have caused the Plaintiffs to be injured in his or her person, business or property, Defendants are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have sustained as a result of such injuries.

### ELEVENTH CAUSE OF ACTION
### VIOLATION OF THE EXPEDITION AGAINST FRIENDLY NATION 18 U.S.C. § 960

153.      Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

-37-

154.   DEFENDANTS's have formed enterprises or non profit corporations, with hundreds of co-conspirators, with the specific intention of going to war against the Republic of Cameroon, purchasing guns for their war, fund raising activities for their enterprise, supporting the armed separatists in Cameroon, and using any terrorism tactics in order to make the English speaking regions "ungovernable" so that it is abandoned by Cameroon.

155.   Cameroon is at peace with the United States, and enjoys quite friendly bilateral relations and cooperation at all levels.

156.   As set forth more fully above, but for the violation of this Statute by Defendants, the attack that injured and killed Plaintiffs employees and John Doe's wife would not have occurred, nor the total loss of their economic interests.

157.   By committing violations of 18 U.S.C. § 960 that have caused the Plaintiffs to be injured in his or her person, business or property, Defendants are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have sustained as a result of such injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants on all Counts, and seeks such relief as specified below for all Counts for which such relief is provided by law:

a) Awarding Plaintiff damages in an amount to be determined at trial;

b) Awarding Plaintiff compensatory and treble damages, as available, in an amount to be proven at trial;

c) Awarding Plaintiff the financial gain earned by Defendants as a consequence of the violations described herein;

d) Awarding Plaintiff statutory damages, as available;

e) Awarding Plaintiff punitive damages, as available;

f) Issuing a **<u>Declaration</u>** that: defendant DEFENDANTS's conduct, and that of DOES Defendants, and like sympathizers, who assist with providing material support to AIG and similar organization attacks on innocent civilians is a violation of USA ant-terrorism act laws.

g) Issuing a Temporary Restraining Order, **<u>Injunction, including a preliminary injunction,</u>**: restraining DEFENDANTS and his agents, fighters, organization, and those acting in active concert or participation with him from: engaging in conduct as alleged in this Complaint, and principally the material support of terrorism in Cameroon, and including, but not limited to an injunction against engaging in these crimes: 18 U.S.C. §2(a) — Aiding, abetting, counseling, commanding, inducing or procuring a federal crime; 18 U.S.C. §371 — Conspiring to commit a federal crime; 18 U.S.C. §2332b — Conspiring to commit an act of terrorism; 18 U.S.C. §2339A - Providing material support to terrorists; 18 U.S.C. §2339C - Prohibitions against the financing of terrorism; international money laundering, kidnapping, assault, battery, murder, destruction of property, civilian intimidation and threats, without limitation.

h) Awarding Plaintiff all costs and attorneys' fees to the full extent permitted under the applicable law;

i) Awarding Plaintiff pre- and post-judgment interest as permitted by law;

j) Awarding any other relief as the Court may deem just and proper.

k) That the Court, *sua sponte*, with its inherent Constitutional and Statutory powers to ensure justice, and to help save lives and pain and sufferings of similar plaintiffs within its jurisdiction:

    a. Refer this matter to the terrorism units of the FBI with jurisdiction over this DEFENDANTS, for investigations and assessment consistent with the allegations herein;

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*          Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

b. Refer this matter to the terrorism units of the California State and local police with jurisdiction over the DEFENDANTS, as their conduct and actions present a clear and present danger of terrorism imminent that harms US citizens, for investigations and assessment consistent with the allegations herein;

c. Refer these defendants to the IRS and Department of Treasury for investigations into their actions, as described herein.

d. All other actions which this Court deems appropriate to prevent terrorist acts emanating from DEFENDANTS harming US citizens and residents.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Date: April 19, 2019                         Respectfully Submitted,

                                                   EMMANUEL NSAHLAI

                                      By: _____/S/_____
                                      NSAHLAI LAW FIRM

                                      EMMANUEL NSAHLAI, SBN (207588)
                                      email: nsahlai.e@nsahlailawfirm.com
                                      3250 WILSHIRE BLVD, STE 1500
                                      LOS ANGELES, CA 90010
                                      Tel (213) 797-0369
                                      Fax (213) 973-4617

                                      Attorney for Plaintiffs

1
2

## **CERTIFICATE OF SERVICE**

3
4

     I HEREBY CERTIFY that on April 17, 2019, I directed that the foregoing document be electronically filed with the Clerk of the Court by using the CM/ECF system, and

5
6
7
8

     [  ] (By U.S. Mail) I deposited such envelope in the mail at Los Angeles, CA on April 19, 2019 with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

9

     Defendant,

10
11
12

By:_____/S/_____
          EMMANUEL NSAHLAI

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-1-
_____
_____ *v.* _____     Case .No. _____
Certificate of Service

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28