```
NSAHLAI LAW FIRM
EMMANUEL NSAHLAI, SBN (207588)
Email: nsahlai.e@nsahlailawfirm.com
3250 WILSHIRE BLVD, STE 1500
LOS ANGELES, CA 90010
Tel  : (213) 797-0369
Fax  : (213) 973-4617
```

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jane Doe, individually and on behalf of others similarly situated, and on behalf of Cameroon Association of Victims of Ambazonia Terrorism, a foreign non-profit corporation; John Doe; DOES plaintiffs 1 through 1,000<br><br>Plaintiffs,<br><br>vs.<br><br>Ambazonia Foundation Inc.; Ambazonia Consulting Inc.; Ambazonia Relief Fund Inc.; Ambazonia Recognitions Collaborative Council ( ARRC) Inc.; Southern Cameroon Relief Fund Ltd; Ambazonia Broadcasting Corporation; Ambazonia Interim Government, entity form unknown; MORISC, entity form unknown; Eric Tano Tataw, an individual; and DOES 1-1000 | Case No.: _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTION AND DECLARATORY RELIEF**<br><br>1. FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ANTI-TERRORISM ACT;<br>2. FOR PERSONAL INJURY DAMAGES PURSUANT TO THE ALIEN TORT CLAIMS ACT;<br>3. FOR RICO (18 U.S.C. § 1962(C))<br>4. FOR RICO CONSPIRACY (18 U.S.C. § 1962(D))<br>5. LIABILITY FOR AIDING AND ABETTING ACTS OF INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a) and 18 U.S.C. §2339a<br>6. LIABILITY FOR CONSPIRING IN FURTHERANCE OF ACTS OF INTERNATIONAL |

-1-

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*     Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

TERRORISM PURSUANT TO 18 U.S.C. § 2333(a) 18 U.S.C. §2339a
7. PROVISION OF MATERIAL SUPPORT TO TERRORISTS IN VIOLATION OF 18 U.S.C. §2339a
8. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
9. PROVISION OF FINANCING OF TERRORISM IN VIOLATION OF 18 U.S.C. § 2339C(a)
10. PROVISION OF FUNDS FROM WITHIN USA TO PLACE OUTSIDE USA FOR AN UNLAWFUL ACTIVITY 18 U.S.C. § 1956
11. VIOLATION OF THE EXPEDITION AGAINST FRIENDLY NATION 18 U.S.C. § 960

**DEMAND FOR JURY TRIAL**

-2-
*Jane Doe et al. v. Ambazonia Foundation Inc. et al*   Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

## I. INTRODUCTION

Plaintiffs are forced to bring this complaint using the "Doe" synonyms against these terrorist organizations because if their true identities are revealed, they will be targets for death, kidnappings, torture, or other heinous crimes, as committed by the armed groups which Defendants finance. When plaintiffs attorney filed a wrongful death complaint against two leaders of these defendant organizations, he has faced a minimum of three publicly posted death threats on Facebook against his life and that of his family, and many others on social media. This case involves terrorism. The Defendants are the corporate entities who, both individually and collectively, direct and control the armed Anglophone separatists groups, and facilitate the financing and material support of terrorism on behalf of the armed separatists groups in the Republic of Cameroon. It is these armed separatist groups that have killed plaintiff Jane Doe's workers, tortured them, cut their fingers and limbs, and annihilated her business. It is the armed separatist groups that killed on April 4, 2019, the common law wife, and mother of his daughter, of plaintiff John Doe. This case also presents a case of clear civil and criminal liability because Defendants, in their public postings, notices, press releases, or communications, essentially admit – without using the words "material support of terrorism" – that they engage in actions which by USA laws, and as defined by the Supreme Court of the United States, equates to criminalized material support of terrorism.

Plaintiffs, on behalf of themselves and all others similarly situated, and on behalf of CAVAT, who have suffered the death of family members, relatives, employees, agents, co-workers, laborers, and resulting from that, suffered severe emotional distress, harassment, anxiety, suffering, sleepless nights and other assorted grief and anguish due to the conduct, actions, participation, and material support of terrorism by Defendants Ambazonia Foundation Inc., Ambazonia Consulting Inc., Ambazonia Relief Fund Inc., Ambazonia Recognitions Collaborative Council (

ARRC) Inc., Southern Cameroon Relief Fund Ltd, Ambazonia Broadcasting Corporation, Ambazonia Interim Government, entity form unknown, MORISC, entity form unknown (collectively "Defendants") bring this action.

Defendants are terrorist corporations and terrorist financing vehicles who conceived a way of scamming millions of Cameroonians from their hard earned money because of Cameroon's linguistic differences – Cameroon is a bilingual country, with 20% of the population English Speaking, and 80% are French speaking, sort of like kind Canada, but with the English/French ratio reversed - to declare a secessionist "government" for the minority English language populations. They have collectively, on information and belief, already raised several million dollars through websites such as www.mytriptobuea.com, www.ambazoniagov.org, and multiple paypal and cashapp accounts through which they control, command, assist, provide expert advise, provide personnel, financial services, training, safehouses, weapons, lethal substances, and so on and forth. The owners and directors of the defendant corporate entities are all publicly engaging in acts constituting **materially support of terrorism,** of violent crimes of killings, kidnappings, murder, violation of students education rights, terrorism, destruction of property and infrastructure, money laundering. Accordingly to United Nations Estimates as of December 2018, the conflict in Cameroon has led to the loss of about 600 civilians, and created 30,000 refugees living in Nigeria, and over 437,000 internally displaced Cameroonians suffering immeasurably. Most unfortunately, included in these statistics are employees of Jane Doe, most recently on April 3, 2019 for Jane Doe when her employee was shot – the third such incident in the past two years. For John Doe, his wife was shot on April 4, 2019.

Terrorism is defined as "the unlawful use of violence and intimidation, especially against civilians, in the pursuit of political aims as," and "international terrorism," according to 18 U.S.C. § 2331 as "activities that involve acts or acts

dangerous to human life that are in violation of the criminal laws of the United States or of any State, that would be a criminal violation if committed within the jurisdiction of the United States or of any State." Defendants provide material support of terrorism, including financing, to the armed separatists groups in Cameroon. Indeed, that is their *raison d'etre*, pardon the French.

This case is not about inhibiting rights to free speech, or to engage in political advocacy, or as a rights group, and it expressly disavows any such intentions, but it is about their conduct, actions, material support, and participation in terrorism, which lead to plaintiffs irreparable injuries. Defendants have engaged in conduct and actions equating to "training", "expert advice or assistance," "service", and providing "personnel" to the armed rebel fighters, which he has brought all under his control, leading to deaths of innocent civilians, including the parents and family members of plaintiffs.

The loss of one's life is never adequately compensated by monetary compensation, nor is the permanent loss of all economic interests of plaintiff. Accordingly, this complaint will also seek a Temporary Restraining Order, preliminary and permanent injunction, as well as declaratory relief, against any and all conduct, actions, participation, and material support of terrorism against Defendants, their promoters, organizations, supporters, accomplices, and DOES Defendants, who will be named once discovery gets going and they are identified.

## NATURE OF ACTION

1. This is an action for Temporary Restraining Order, Preliminary and Permanent Injunction, as well as damages against Defendants and DOES 1-5000, pursuant to the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA") for aiding, abetting, accessories to crime before and after the fact, and pursuant the Material Support of Terrorism Statutes 18 U.S.C. § 2333A, for knowingly providing material support and resources to armed separatist groups that carried out Attack that killed plaintiff's Jane

Doe's employees on April 3, 2019, plaintiff John Doe's common law wife and mother of his minor daughter on April 4, 2019, as wells attacks throughout circa October 2016 to present that has killed hundreds of innocent civilians, who are the parents, children, and spouses, of US citizens and residents natives of Cameroon. A Congressional excellent rendition of the history and purposes of 18 U.S.C. § 2333A ("the material support of terrorism statutes") can be reviewed here.[1]

2. The ATA's civil remedies have served as an important means for enforcing the federal criminal anti-terrorism provisions since the early 1990s.

3. Congress enacted the ATA in October 1992 as a legal complement to criminal penalties against terrorists that kill or injure Americans abroad, specifically intending that the civil provisions would not only provide a mechanism for compensating victims of terror but also serve as an important means of depriving terrorists of financial resources to carry out attacks.

4. Following the bombing of the World Trade Center in New York by al-Qaeda in1993, Congress targeted terrorist resources again by enacting 18 U.S.C. § 2339A in September 1994, making it a crime to provide material support or resources knowing or intending that they will be used in preparing or carrying out terrorist acts.

5. In April 1996, Congress further expanded the effort to cut off resources to terrorists by enacting 18 U.S.C. § 2339B, making it a crime to knowingly provide material support or resources to a designated foreign terrorist organization.

6. In the wake of the terror attacks on the United States by al-Qaeda on September 11, 2001 killing nearly 3,000 Americans, Congress amended the "material support" statutes, 18 U.S.C. §§ 2339A-B, via the PATRIOT Act in October 2001 and the Intelligence Reform and Terrorism Prevention Act of 2004, to impose greater

---

[1] https://fas.org/sgp/crs/natsec/R41333.pdf

criminal penalties for violating these statutes and to expand the definition of "material support or resources" prohibited thereby.

7. The Ambazonia Interim Government ("AIG") is the self-anointed "government" of a most violent and repressive Ambazonian separatist movement, and, upon the coordination and planning and support and conspiracy of co-Defendants, it has pooled together all armed separatists fighters in their "Ambazonia" region under its Umbrella in joint command, control, and coordination with co-defendants.

8. In reality, the AIG and co-Defendants are a RICO criminal enterprise, a scam, formed under the guise of several non-profit corporations which are co-defendants, and engaging in the material support of terrorism in the conflict region of Cameroon.

9. These non-profit corporations, on information and belief, materially misrepresented their true intentions to the IRS in seeking non-profit 501c status. A complaint referral against each of them will be made to the IRS and to the Department of Assessments and Taxation, Maryland.

10. Corporate defendants, as non profit corporations, are not supposed to engage in political and legislative lobbying which they consistently do, nor the purchase of firearms, or material support of crimes and violence – they have raised funds, and financed armed separatists in Cameroon which have killed plaintiffs laborers, cut their fingers, burnt their houses, if they disobeyed their edicts, such as, "ghost town," which prevents any civilian from stepping out of their home or going to work.

11. Officially, defendants aim to raise the cost of Cameroon's government in the North West and South West regions of Cameroon to be higher than the profits the country gets from there; their aim is to make North-West and South-West regions of Cameroon "ungovernable" ( as publicly declared), and to coerce, intimidate, kill,

kidnap, harm any innocent civilians who do not obey or agree or subscribe to their political goals.

12. At several points in 2018, Amnesty International and Human Rights Watch have accused the AIG separatists, materially supported by co-Defendants, of violently enforcing the boycott of government schools by destroying over 40 schools and assaulting teachers who refused to comply. They've also been accused of kidnapping civilians suspected of working with the government.

13. Defendants knowing provide material support to the AIG, its fighters, agents, and related organizations, with the knowledge and intent, that they execute violent acts and crimes, in violation of USA laws, and such violent acts and crimes, not only harm Cameroonians living within Cameroon, but also a substantial portion of USA citizens of Cameroonian origin, whose parents, siblings, children, extended family are killed, businesses ruined, property stolen, and thus they suffer intolerable pain and anguish; or kidnappings, and the US based Cameroonians are contacted to pay ransom, as happens hundreds of times.

14. By providing material support and platform, including holding fund raising activities for the armed separatist groups in Cameroon that are causing death to and irreparable injuries to plaintiffs, Defendants have violated the federal prohibitions on providing material support or resources for acts of international terrorism (18 U.S.C. § 2339A), and committed acts of international terrorism as defined by 18 U.S.C. § 2331, as well as violated numerous other Federal and State criminal laws, as described further below. Accordingly, Defendants are liable pursuant to 18 U.S.C. § 2333 to the plaintiffs, who were injured by reason of acts of international terrorism.

15. Plaintiffs' claims are based upon Defendants command, control, and operation of the armed separatist fighters that cause them irreparable harm and injury, and their provision of the financing and fund raising vehicle, corporate entity,

appearance of legitimacy infrastructure, platform, which provides material support to AIG and related armed separatists in Cameroon.

### THE PARTIES

16. Jane Doe, a U.S.A citizen, and a resident of this County, has had her employees killed, fingers cut, feet sliced, houses burnt, when ever armed separatists realize that they have gone to work to her place of business. The latest killing of Jane Doe's employee occurred on April 3, 2019 in the conflict region of Cameroon.

17. John Doe is a national of Cameroon. His common law wife, and mother of his daughter, was killed by armed separatists on April 4, 2019, because she violated their "lockdown" which they decreed, by and through their leaders residing here in USA, that no one should step outside of their homes during the period April 4th through April 14th, 2019.

18. The Cameroon Association of Victims of Ambazonia Terrorism ("CAVAT") is a foreign non-profit corporation, with headquarters in Yaounde, Cameroon. It is comprised of victims of Ambazonia Terrorism, violence, and other crimes, to themselves, their family members, loved ones, and friends. The acts of violence committed against members of CAVAT and their families include the killings or assassinations of their family members, torture, maiming, kidnapping, arson against their property, and intimidation. The latter "intimidation" occurs to compel them to scribe to "separation" from Cameroon.

19. The nondisclosure of Jane Doe's identity, as well as that of John Doe, is necessary for Jane Doe and her family's life, as Defendants are currently operational and engaging in consistent acts of terrorism. As the 9th Circuit has held, pseudonyms may be used to protect a party from "injury", and "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII* v. *Advanced Textile Corp.,* 214 F.3d

-7-

*Jane Doe et al. v. Ambazonia Foundation Inc. et al*      Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

1058, 1067-68 (9th Cir. 2000)(quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981). Plaintiffs will seek leave of court to proceed under a pseudonym.

20. DOES Plaintiffs 1 -1000 are both USA citizens and Cameroon citizens, whether living in the USA or in Cameroon, who have suffered injury or harm, whether to themselves, or death of their parents and siblings, or loss of all economic interests and property, due to the actions of Defendants.

21. Like minded Plaintiffs have setup a website, www.cameroonvictims.org, where similar plaintiffs, whether residing in the USA or in Cameroon, may submit in confidentiality the story of their loss, so that plaintiff's attorney may join them in this lawsuit.

22. Defendant Ambazonia Foundation Inc., is a Maryland non-profit corporation. It has obtained IRS 501c non profit status.

23. Defendant Ambazonia Consulting Inc. is a Maryland stock corporation. It's leaders are Etchu Tabenyang and Samuel Ikome. The latter, Samuel Ikome, is the self-declared "interim president" of the non-existent "Federal Republic of Ambazonia." He has approved all actions of defendants, in his capacity as president.

24. Defendant Ambazonia Relief Fund Inc. is a Maryland non-profit corporation. It's founders are Ebenezer M. Akwanga, John Mbah Akuroh, and Elvis Kometa, individuals who, in their social media video and written posts, there is clear evidence of them ordering the killings, torture, kidnappings, arson of property, of civilians and others who they consider as enemies or as "occupiers."

25. Defendant Ambazonia Recognitions Collaborative Council ( ARRC ) Inc. is a Maryland non-profit corporation. It's founders Jude Ambe, Boh Herbert, Lambert Mbom, Jude Ozughen are individuals who in their social media video and written posts, there is evidence of them aiding and abetting, and conspiring, and acting as accessories, to the ordering, killings, torture, kidnappings, arson of property, of civilians and others who they consider as enemies or as "occupiers."

-8-
*Jane Doe et al. v. Ambazonia Foundation Inc. et al*   Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

26. MoRISC is headed by Boh Herbert, one of the founding fathers of ARRC above in paragraph 23, with the business form of MoRISC unknown, whose website is at: https://morisc.org/.

27. Defendant Ambazonia Broadcasting Corporation is a Maryland non – profit corporation. It's founder fathers are Sebastain Mbariku, George Fon, and Henry Mokube.

28. Defendant Ambazonia Interim Government, form of business or association uknown, is an organization that has declared itself the "government" of the "Ambazonia" people. It's website notes it is the "Interim Governmetn Official Site Federal Republic of Ambazonia."[2]

29. Defendant Southern Cameroon Relief Fund Ltd is a Maryland non-profit corporation. It's founders are Chistensia Asong, and Eric Tataw. We have attached eight separate videos as evidence in related pleadings where Eric Tataw orders his fighters to cut the limbs, hands, or other body organ of anyone who does not obey his edicts or approves of his separatist movement.

30. Defendant Eric Tano Tataw, an individual, is a resident of Hyattsville, Maryland. Eric Tataw has consistently ordered his fighters to kill, cut the hands and limbs, of anyone who opposes his separatists views, and his orders, posted on Facebook on or about April 1, 2019, are a direct cause of the death of plaintiff's employee and John Doe's wife. Eric Tataw is also the founder of the Southern Cameroon Relief Fund Ltd.

31. DOES Defendants 1 through 5000 are US residents, nationals, citizens, who are natives of Cameroon, who have provided financial and other material support, including training, expert advice or assistance, service, and personnel, to named

---

[2] https://www.ambazoniagov.org/

defendants and related entities in violation of Federal and State Anti-terrorism laws, and other criminal statutes.

## JURISDICTION AND VENUE

32. The Court has jurisdiction over this case under 28 U.S.C. §1331 (federal question jurisdiction); and 28 U.S.C. §1332 (diversity jurisdiction).

33. Jurisdiction over this action further exists pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between the parties and the amount in controversy herein exceeds $75,000.00, exclusive of costs.

34. Venue lies in the Central District of California because one of the plaintiffs resides in this district, and pursuant to 18 U.S.C. §1332.

35. Venue is further proper in this district pursuant to 18 U.S.C. §2334(a).

36. The defendant are subject to jurisdiction pursuant to 28 U.S.C. §1331, in that, as set forth in detail below, this action: seeks money damages against Defendants for injury and death and loss of business and property caused by Defendants, which constitutes an act of "international terrorism" in the United States as defined in 18 U.S.C. §2331. Because of Defendants material support of terrorism and violence, it caused the deaths of plaintiffs and their loved ones, as well as total annihilation, ongoing, of plaintiff Jane Doe's business.

37. The Defendants are also subject to jurisdiction pursuant to 28 U.S.C. §1331 in that, as set forth in detail below, this action seeks money damages against Defendants for injury and/or death occurring in the United States and caused by the tortious act or omission Defendants and/or one or more of his agents or partners acting within the scope of their agency or partnership.

## II. FACTUAL ALLEGATIONS

-10-
*Jane Doe et al. v. Ambazonia Foundation Inc. et al*     Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

## A. LEGAL BACKGROUND: ANTITERRORISM LEGISLATION

    i.    The Antiterrorism Act ("ATA")

38. In the 1980's, terrorist groups carried out a number of major terror attacks around the world, killing and injuring many Americans abroad.

39. Among these terror attacks were:

    a. The April 1983 suicide bombing of the U.S. Embassy in Beirut, Lebanon, killing 63 people, including 17 Americans;

    b. The October 1983 suicide bombing of U.S. Marine barracks in Beirut, Lebanon, killing 241 U.S. Marines and injuring more than 100;

    c. the December 1983 terrorist bombings of the U.S. Embassy and the residential quarters of American company Raytheon in Kuwait;

    d. The September 1984 terrorist bombing of a U.S. Embassy annex northeast of Beirut, Lebanon;

    e. The June 1985 hijacking of TWA flight 847;

    f. The October 1985 hijacking of the Achille Lauro cruise ship and murder of wheelchair-bound American Leon Klinghoffer; and

    g. The December 1985 terrorist bombings of the Rome and Vienna airports.

40. In response to these attacks, Congress in 1986 amended the U.S. Criminal Code, Title 18, Part I, to add a new chapter titled, "Extraterritorial Jurisdiction Over Terrorist Acts Abroad Against United States Nationals."

41. This new chapter contained a new section titled, "Terrorist acts abroad against United States nationals," providing criminal penalties for killing, conspiring, or attempting to kill a national of the United States, or engaging in physical violence with the intent to cause serious bodily injury to a national of the United States or that results in serious bodily injury to a national of the United States.

42. In addition, Congress later enacted the ATA, which established a private cause of action for U.S. nationals injured by acts of international terrorism, as a legal complement to the criminal penalties against terrorists that kill or injure Americans abroad.

43. In enacting the ATA, Congress specifically intended that the civil cause of action would not only provide a mechanism for compensating victims of terror, but also serve as an important means of depriving terrorists of financial resources to carry out attacks.

44. As the ATA was being considered in Congress, the State Department's Deputy Legal Advisor, Alan J. Kreczko, testified before the Senate Judiciary Committee's Subcommittee on Courts and Administrative Practice that this proposed bill "will add to the arsenal of legal tools that can be used against those who commit acts of terrorism against United States citizens abroad."[3]

45. The Deputy Legal Advisor also testified:

> "[T]his bill will provide general jurisdiction to our federal courts and a cause of action for cases in which an American has been injured by an act of terrorism overseas.
> We view this bill as a welcome addition to the growing web of law we are weaving against terrorists. . . . The existence of such a cause of action . . . may deter terrorist groups from maintaining assets in the United States, from benefiting from investments in the U.S. and from soliciting funds within the U.S. In addition, other countries may follow our lead and implement complimentary national measures, thereby increasing obstacles to terrorist operations.
> Moreover, the bill may be useful in situations in which the rules of evidence or standards of proof preclude the U.S. government from effectively prosecuting a criminal case in U.S. Courts. Because a different evidentiary standard is

---

[3] "Statement of Alan J. Kreczko, Deputy Legal Adviser, On S. 2465: A bill to provide a new civil cause of action in federal court for terrorist acts abroad against United States nationals," Before the Subcommittee on Courts and Administrative Practice of the Senate Judiciary Committee (July 25, 1990), https://www.state.gov/documents/organization/28458.pdf.

involved in a civil suit, the bill may provide another vehicle for ensuring that terrorists do not escape justice."[4]

46. Likewise, Senator Grassley, one of the sponsors of the bill, explained a purpose of ATA's civil cause of action as follows:

> "The United States must take a strong stand against terrorism. The Department of State testified that this bill would add to the arsenal of legal tools that can be used against those who commit acts of terrorism against U.S. citizens abroad.
> . . .
> Now is the time for action. Now is the time to strengthen our ability to both deter and punish acts of terrorism.
> We must make it clear that terrorists' assets are not welcome in our country. And if they are found, terrorists will be held accountable where it hurts them most: at their lifeline, their funds."[5]

47. In July 1992, a Senate Committee Report explained that the ATA's treble damages provision "would interrupt, or at least imperil, the flow of money" to terrorist organizations.

48. In October 1992, Congress enacted ATA's civil provisions, including 18 U.S.C. §2333.

**B. The "Material Support" Statutes and Regulations**

49. On February 26, 1993, a group of *al-Qaeda* terrorists detonated a truck bomb under the North Tower of the World Trade Center in New York City, attempting to cause the collapse of both towers and the death of thousands of Americans.

50. Although the damage from the World Trade Center bombing was limited, it nevertheless killed six people and injured more than one thousand.

51. In response, Congress again took aim at the resources available to terrorists in September 1994 and enacted 18 U.S.C. § 2339A, making it a crime to

---

[4] Id.
[5] 36 Cong. Rec. 26716-26717 (Oct. 1, 1990), https://www.gpo.gov/fdsys/pkg/GPO-CRECB-1990-pt19/pdf/GPO-CRECB-1990-pt19-1.pdf.

-13-
*Jane Doe et al. v. Ambazonia Foundation Inc. et al*    Case .No. _____
Complaint For Damages, Injunction and Declaratory Relief

provide material support or resources to terrorists, knowing or intending that they would be used for terrorist acts.

52. DEFENDANTS and DOES Defendants engage in the provision of material support of terrorism through their AIG and its agents and soldiers, as Defendants conduct through fund raising meetings, declarations for actions which incite immediate and imminent hard to innocent civilians, their officially declared aim of conduct intimidation and threats against civilians, of kidnappings, and their acknowledged kidnappings, killings, of civilians they find non-compliant with their civilian goals. DEFENDANTS provide expert advice or assistance, personnel, training, and service to the AIG and related armed separatists who conduct acts of violence, intimidation, killings against civilians in the Anglophone regions of Cameroon.

53. 18 U.S.C. § 2339C implements the International Convention for the Suppression of the Financing of Terrorism. It proscribes the "unlawful[] and willful[]" provision or collection of funds with the intention or knowledge that they are to be used, in full or in part, to carry out a terrorist attack. 18 U.S.C. § 2339C(a) (2014). The predicate acts are offenses prohibited under international law by a counterterrorism treaty, id. § 2339C(a)(1)(A), (e)(6)–(7), or an act "intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population, or to compel a government or an international organization to do or to abstain from doing any act[.]" The intentions of the defendants are "separation" from Cameroon, and their terrorist, violence, crimes are all acts intended to cause the "government" of Cameroon to allow them to separate. They have publicly declared that, if through violence and guerilla warfare, the costs of remaining in their "region" is higher than the benefits of that region continuing to be part of Cameroon, then the government of Cameroon will allow the "separation." Hence, defendants have adopted the most heinous acts of terrorism to scare away the Cameroon government. *Id.* § 2339C(a)(1)(B).

## PLAINTIFF SPECIFIC FACTUAL ALLEGATIONS AGAINST CORPORATE DEFENDANTS

54. Plaintiffs seek such relief against DEFENDANTS for the attributable acts of the armed separatist groups in the North West and South West regions of Cameroon, its bodies, alter-egos, and officers, employees and agents acting within the scope of their office, employment or agency by DEFENDANTS knowingly providing material support and resources to the Armed separatists and facilitating the deaths of hundreds of others, in that, as set forth in detail herein, they:

    a. Provide training, lodging, weapons, expert assistance, and financial support to armed separatists groups to engage in terrorist activities, including intimidation of civilians, and destruction of property.

    b. Provide financing for the terrorist training camps in the North-West and South-West regions of Cameroon where Armed separatists indoctrinated and taught their soldiers how to carry out guerilla warfare, intimidation, violence, and terrorism against any military or uncooperative or unsupportive civilians.

    c. Provide critical logistical support and resources to Armed separatists around North-West and South-West regions of Cameroon, funding safe houses, transferring Armed separatists money, weapons and equipment across international borders and other assistance, all of which enabled Armed separatists to conduct the attacks that killed plaintiffs parents and kills scores of other civilians, as well as resulted in total economic losses for plaintiff.

    d. Actively supported armed separatist groups in its final preparations for the hit and run attacks and kidnappings, through a network of the their soldiers, officers, and/or agents who met with and aided the AIG killers,